STATE OF CONNECTICUT *v.* MICHAEL JENKINS
(AC 23437)

Bishop, McLachlan and Mihalakos

112

Argued October 29, 2003—officially released March 23, 2004

*Claudia A. Baio*, with whom, on the brief, was *Richard D. Tulisano*, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom were *Tracy Cass*, certified legal intern, and, on the brief, *Scott J. Murphy*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Michael Jenkins, appeals from the judgment of conviction rendered by the trial court subsequent to his plea of nolo contendere

to the charge of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). On appeal, the defendant claims that the court improperly denied his motion to suppress evidence pursuant to Practice Book § 41-12, General Statutes §§ 54-33f, 54-33k and 54-33*l*, article first, § 7, of the constitution of Connecticut, and the fourth and fourteenth amendments to the United States constitution in that the court improperly concluded that (1) there was probable cause to place him under arrest and that the ensuing search was, therefore, lawful as a search incident to an arrest, and (2) the purported strip search of him that was conducted by the police did not rise to the level of a fourth amendment violation. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. During the week of March 6, 2000, Detective Jerry Chrostowski of the New Britain police department received information from a confidential informant that the defendant was involved with drug trafficking. The informant provided Chrostowski with the defendant's pager number. On March 11, 2000, Chrostowski called the pager number on a police department telephone equipped with caller identification technology.

Chrostowski's page was returned within five minutes. Chrostowski then contacted the Southern New England Telephone Company, which traced the number to 41 Harvard Street in New Britain. Chrostowski was familiar with the defendant and had personal knowledge that he resided at that address. Chrostowski identified himself as "Chris," and the caller referred to himself as "Mike." Chrostowski ordered ten packets of heroin from the defendant for $80, and the men agreed to meet at East Side Pizza in New Britain to complete the sale. Chrostowski relayed that he would be wearing a baseball cap.

While Chrostowski waited outside of the restaurant, a New Britain police officer informed him that a black male was exiting his residence and going toward the restaurant. The defendant began to approach Chrostowski and came within seven feet of him when he suddenly stopped upon seeing the officer's face. The defendant was then placed under arrest by several New Britain police officers and charged with attempt to sell narcotics.

The defendant was handcuffed and taken to the side of the restaurant to be searched. Chrostowski seized the defendant's beeper, which contained the number from which Chrostowski had paged him. Officer Christopher Brody searched the defendant and felt an object in the defendant's buttocks inconsistent with the male anatomy. Brody pulled the defendant's pants and underwear away from his body and discovered glassine packets. The packets were seized and tested positive for heroin and crack cocaine.

The defendant later was charged in a substitute information with possession of narcotics with the intent to sell in violation of § 21a-277 (a). On September 12, 2000, the defendant filed a motion to suppress the evidence seized from him, which was denied. The defendant then entered a plea of nolo contendere under General Statutes § 54-94a. The defendant was sentenced to a three year term of imprisonment to run consecutively to a prior sentence. This appeal followed.

I

A

The defendant first claims that the court improperly found that there was probable cause for the police to have placed him under arrest.[1] He reasons that the

---

[1] The defendant also claims a violation of his rights under article first, § 8, of the constitution of Connecticut. "Because the defendant has not briefed his claim separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised

subsequent search was, therefore, not lawful as a search incident to an arrest. Specifically, the defendant claims that probable cause to arrest could not have existed because a reasonable person, under the circumstances, would not have assumed that he was necessarily about to sell narcotics. We disagree.

The defendant claims that simply the fact that Chrostowski paged him to order drugs and that he told Chrostowski to meet him at the restaurant does not reasonably lead to the conclusion that he was actually going to sell any drugs. He argues that it is not unreasonable to assume that he went to the restaurant solely to find out the identity of the potential buyer. He maintains that the police did not give him the opportunity to commit any crime.

We first set forth the standard of review and legal principles that guide our analysis. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." *State* v. *Bjorklund,* 79 Conn. App. 535, 548, 830 A.2d 1141 (2003).

"It is well established . . . that a warrant is not required when a search is conducted incident to a lawful custodial arrest. . . . *New York* v. *Belton,* 453 U.S. 454,

litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Pepper,* 79 Conn. App. 1, 5 n.4, 828 A.2d 1269, cert. granted on other grounds, 266 Conn. 919, 837 A.2d 801 (2003).

457, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)." *State* v. *Clark*, 255 Conn. 268, 291, 764 A.2d 1251 (2001). "When an arrest is made, it is reasonable for a police officer to search for, and seize, any weapons or evidence within the immediate control of the arrested person in order to ensure officer safety and prevent the destruction or concealment of evidence." *State* v. *Clark*, supra, 292.

"General Statutes § 54-1f (b) authorizes a police officer to conduct a warrantless arrest of any person who the officer has reasonable grounds to believe has committed or is committing a felony. The phrase reasonable grounds to believe is synonymous with probable cause." (Internal quotation marks omitted.) *State* v. *Cooper*, 65 Conn. App. 551, 564–65, 783 A.2d 100, cert. denied, 258 Conn. 940, 786 A.2d 427 (2001).[2]

"In order for a warrantless felony arrest to be valid, it must be supported by probable cause. . . . The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. . . . The probable cause test then is an objective one. . . . We consistently have held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . The existence of probable cause

---

[2] General Statutes § 54-1f (b) provides: "Members of the Division of State Police within the Department of Public Safety or of any local police department or any chief inspector or inspector in the Division of Criminal Justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony."

does not turn on whether the defendant could have been convicted on the same available evidence. . . . [P]roof of probable cause requires less than proof by a preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 292–93.

In the present case, there was probable cause for the police to arrest the defendant under the totality of the circumstances. Chrostowski contacted the defendant on the basis of information from a confidential informant that the defendant was engaged in drug trafficking. The informant was reliable because information from him had led to several previous convictions. Chrostowski corroborated the information by calling the pager number that was given to him by the informant and confirming that the number from which his page was returned was that of the defendant's residence. In addition, Chrostowski had personal knowledge that the 41 Harvard Street the address from which the defendant called was in fact the defendant's residence.

"In *State* v. *Velasco* [248 Conn. 183, 194–95, 728 A.2d 493 (1999)] . . . we held that information supplied by a *reliable* informant, by itself, may be sufficient to establish probable cause, and that the information need not be corroborated through independent investigation." (Emphasis in original.) *State* v. *Respass*, 256 Conn. 164, 178–79, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). "[S]tatements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police." (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 110, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002).

Moreover, Chrostowski personally negotiated with the defendant for the sale of narcotics. The defendant

verbally agreed to sell ten packets of heroin to Chrostowski for $80 and arranged to meet him at East Side Pizza. In addition, another officer observed the defendant leaving his residence and going toward the restaurant to meet Chrostowski.

The defendant also argues that the police did not afford him the opportunity to actually commit a crime. The defendant was, however, arrested on a charge of attempt to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-49 (a) (2).[3] Pursuant to § 53a-49 (a) (2), to be guilty of attempt, an individual must take a "substantial step in a course of conduct planned to culminate in his commission of the crime." The defendant arranged for the sale of heroin to Chrostowski, left his residence and was going in the direction of the restaurant to meet with Chrostowski. Such evidence was sufficient to constitute the requisite "substantial step."[4]

On the basis of the previously discussed evidence, we conclude that the New Britain police could have

[3] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] In making its determination of whether the defendant took the necessary "substantial step," the court contemplated that that the defendant was carrying heroin on his person while walking toward the restaurant. We note that this evidence could not have been discovered until after the defendant was arrested and subsequently searched, and, therefore, that evidence properly was not considered as establishing probable cause for the arrest. We conclude that the consideration of that evidence by the court was harmless, as there was other evidence to support the court's conclusion that the defendant's actions constituted a "substantial step" pursuant to General Statutes § 53a-49 (a) (2).

reasonably believed that the defendant was committing a felony, as stated in § 54-1f (b). We therefore conclude that the warrantless arrest of the defendant was lawful.

## B

Having determined that the warrantless arrest of the defendant was lawful, we now turn to the ensuing search and seizure of evidence. "[I]f the defendant's arrest was lawful, the subsequent warrantless search . . . also was lawful." *State* v. *Velasco*, supra, 248 Conn. 189. It is well settled that "[o]ne recognized exception to the warrant requirement applies when a search is conducted incident to a lawful custodial arrest. . . . This exception permits a police officer to conduct a full search of an arrestee and to seize evidence as well as weapons." (Citations omitted.) *State* v. *Trine*, 236 Conn. 216, 235–36, 673 A.2d 1098 (1996). In light of our determination that the arrest of the defendant was proper, we also conclude that the ensuing search was lawful as a search incident to a lawful arrest.

## II

The defendant's second claim is that the court improperly found that the purported strip search of the defendant did not rise to the level of a fourth amendment violation. The defendant reasserts his argument that the police did not have probable cause under the fourth amendment to arrest him and that the search was therefore necessarily improper. In the alternative, he claims that the search constituted a strip search under § 54-33k[5] because his pants and underwear were

[5] General Statutes § 54-33k provides: "For the purposes of this section and section 54-33l, 'strip search' means having an arrested person remove or arrange some or all of his or her clothing or, if an arrested person refuses to remove or arrange his or her clothing, having a peace officer or employee of the police department remove or arrange the clothing of the arrested person so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments used to clothe said anatomical parts of the body."

pulled away from his body for Brody to retrieve the glassine packets. He then argues that the officers who conducted that purported strip search did not follow the procedure outlined for strip searches in § 54-33*l*.[6]

The defendant goes on to claim that there is necessarily a connection between the strip search statutes and the fourth amendment, and that the evidence obtained in violation of § 54-33k warrants exclusion, insisting that the legislature would not have enacted a statute for which there were no consequences for its violation. He also maintains that because the legislature framed § 54-33*l* in such a way as to limit searches and seizures,

---

[6] General Statutes § 54-33*l* provides: "(a) No person arrested for a motor vehicle violation or a misdemeanor shall be strip searched unless there is reasonable belief that the individual is concealing a weapon, a controlled substance or contraband.

"(b) No search of any body cavity other than the mouth shall be conducted without a search warrant. Any warrant authorizing a body cavity search shall specify that the search is required to be performed under sanitary conditions and conducted either by or under the supervision of a person licensed to practice medicine in accordance with chapter 370.

"(c) All strip searches shall be performed by a person of the same sex as the arrested person and on premises where the search cannot be observed by persons not physically conducting the search or not absolutely necessary to conduct the search.

"(d) Any peace officer or employee of a police department conducting a strip search shall (1) obtain the written permission of the police chief or an agent thereof designated for the purposes of authorizing a strip search in accordance with this section and section 54-33k and (2) prepare a report of the strip search. The report shall include the written authorization required by subdivision (1) of this subsection, the name of the person subjected to the search, the name of any person conducting the search and the time, date and place of the search. A copy of the report shall be provided to the person subjected to the search.

"(e) Nothing in this section shall preclude prosecution of a peace officer or employee under any other provision of the general statutes.

"(f) Nothing in this section shall be construed as limiting any statutory or common law rights of any person for purposes of civil action or injunctive relief.

"(g) The provisions of this section and section 54-33k shall not apply when the person is remanded to a correctional institution pursuant to a court order."

it follows that it considered a search in violation of the statutes to be an unreasonable search under the fourth amendment. We disagree.

## A

This claim presents a question of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 544, 816 A.2d 562 (2003).

We conclude that the search conducted in this case was not a strip search for the purposes of applying §§ 54-33k and 54-33*l*. Sections 54-33k and 54-33*l* do not address those strip searches that are conducted incident to a lawful arrest on a *felony* charge. The only reference to a search incident to an arrest is found in § 54-33*l* (a), which specifically involves motor vehicle violations and misdemeanors. The remaining subsections of the statute, which impose various procedural requirements necessary to conduct a strip search, make no mention of the type of search conducted under the facts of this case.

The legislative history of those provisions supports that reading of the statutory language. "We will not impute to the legislature an intent that is not apparent from unambiguous statutory language in the absence

of a compelling reason to do so." *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 195, 663 A.2d 1001 (1995). Rather, "[w]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained." (Internal quotation marks omitted.) *Winchester* v. *Northwest Associates*, 255 Conn. 379, 388, 767 A.2d 687 (2001).

The legislative history of §§ 54-33k and 54-33*l* reveals that those provisions were an attempt by the legislature to protect Connecticut citizens from groundless strip searches and a response to a proliferation of lawsuits against police departments for such searches. See 23 S. Proc., Pt. 5, 1980 Sess., pp. 1589, 1593. Comments made by various legislators reflect that the statutes explicitly allow for such strip searches when the officer has a reasonable belief, after conducting a patdown, that there may be a weapon or controlled substance. "This Bill would prohibit strip searches of any person arrested for a *traffic or misdemeanor offense* unless the case involves weapons or a control[led] substance or there is a reasonable belief such person is concealing a weapon or control[led] substance . . . ." (Emphasis added.) 23 S. Proc., Pt. 5, 1980 Sess., p. 1588, remarks of Senator Salvatore C. DePiano.[7] Those statutes are, therefore, inapplicable to the factual scenario presented in this appeal.

### B

The search conducted by Brody was akin to a strip search as those searches commonly are

---

[7] Senator DePiano was one of two chairmen of the judiciary committee in 1980. The other chairman, Representative Richard D. Tulisano, echoed the statements of Senator DePiano. "Mr. Speaker, what this bill will do [is] restrict the manner in which strip searches may be conducted in that no person arrested for a motor vehicle violation or a misdemeanor can be strip searched . . . unless the arrest involves a weapon or a controlled substance and . . . there would be reasonable belief for an arresting officer to believe that an individual might be concealing a weapon o[r] controlled substances." 23 H.R. Proc., Pt. 5, 1980 Sess., p. 1130, remarks of Representative Richard D. Tulisano.

defined.[8] It has been recognized that under the fourth amendment to the federal constitution, officers are permitted to strip-search an individual when, subsequent to a lawful arrest and patdown, they have a reasonable suspicion that the individual is carrying a weapon or contraband. See *Cuesta* v. *School Board of Miami-Dade County*, 285 F.3d 962, 969–70 (11th Cir. 2002); *Kennedy* v. *Los Angeles Police Dept.*, 901 F.2d 702, 716 (9th Cir. 1989); *Sarnicola* v. *County of Westchester*, 229 F. Sup. 2d 259, 270 (S.D.N.Y. 2002) ("[w]hile the [United States Court of Appeals for the] Second Circuit has not spoken directly to the appropriate test for the validity of a strip search incident to a felony arrest, this Court recently opined that the Court of Appeals would apply the particularized reasonable suspicion test to searches of felony arrestees as well").

Accordingly, we adopt the reasonable suspicion standard for strip searches incident to a lawful felony arrest. "Reasonable and articulable suspicion is an *objective standard* that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Emphasis added; internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997). "Thus, [r]easonable and articulable suspicion is . . . based not on the officer's inchoate and unparticularized suspicion or hunch, but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (Citation omitted; internal quotation marks omitted.) *State* v. *Clark*, supra, 255

---

[8] "A 'strip search,' though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A 'visual body cavity search' extends to visual inspection of the anal and genital areas. A 'manual body cavity search' includes some degree of touching or probing of body cavities." *Blackburn* v. *Snow*, 771 F.2d 556, 561 n.3 (1st Cir. 1985).

Conn. 285, quoting *Terry* v. *Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

A strip search requires independent analysis under the fourth amendment to determine whether the requisite reasonable suspicion exists. See *Swain* v. *Spinney*, 117 F.3d 1, 5 (1st Cir. 1997). Fourth amendment jurisprudence prohibits unreasonable searches incident to an arrest. See *Amaechi* v. *West*, 237 F.3d 356, 361 (4th Cir. 2001). In determining whether a search is reasonable under the fourth amendment, a court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell* v. *Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The test for reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

The search in this case was supported by reasonable suspicion because the officers involved reasonably could have believed that the defendant was concealing contraband on his person. Brody testified that he conducted a patdown of the defendant to search for both weapons and contraband. The defendant was going in the direction of the restaurant he and Chrostowski had designated as their meeting place. The defendant began to approach the officer and came within feet of him when he suddenly stopped upon seeing Chrostowski's face. It was reasonable to assume that the defendant was meeting Chrostowski specifically for the purpose of selling drugs to the officer and that, therefore, he would have drugs on his person. Moreover, Brody clearly felt a bulge in the defendant's buttocks inconsistent with the male anatomy during the patdown after the arrest. The existence of reasonable suspicion further was supported by the nature of the charge itself, namely, attempt to sell a narcotic substance. See *Kennedy* v. *Los Angeles Police Dept.*, supra, 901 F.2d 716

(reasonable suspicion may be based on factors such as nature of the offense).

A custodial arrest gives rise to the authority to search, even if the arresting officer does not "indicate any subjective fear of the [defendant] or . . . suspect that [the defendant] was armed." *United States* v. *Robinson*, 414 U.S. 218, 236, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the *need to preserve evidence on his person* for later use at trial. . . . It is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that amendment." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 234–35. It was, therefore, of no moment that Brody was searching for weapons *or* contraband.

We must also consider the manner in which the search was conducted. See *Bell* v. *Wolfish*, supra, 441 U.S. 559. Strip searches have been described as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." (Internal quotation marks omitted.) *Swain* v. *Spinney*, supra, 117 F.3d 6–7. "Indeed, a strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual." (Internal quotation marks omitted.) *Wood* v. *Clemons*, 89 F.3d 922, 928 (1st Cir. 1996).

In this case, the manner in which the officers conducted the strip search struck the appropriate balance between "the need for the particular search" and "the

invasion of personal rights . . . ." *Bell* v. *Wolfish*, supra, 441 U.S. 559. The officers took the defendant to the side of the restaurant, away from the street and out of public view. Brody did not require him to remove any of his clothing, but rather pulled his pants and underwear away from his body specifically to retrieve the glassine packets he discovered and suspected were there from the patdown of the defendant.

On the basis of the foregoing analysis, we hold that the court correctly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.