# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2448

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Robert Lee Williams, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 18, 2006
Filed: February 22, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A grand jury indicted Robert Lee Williams for possession with intent to distribute approximately 42 grams of a mixture or substance that contained cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). Williams moved to suppress evidence that was seized when police officers opened his pants and reached inside his underwear in the parking lot of a police precinct station. The district court ruled that the search violated the Fourth Amendment, and granted Williams's motion to suppress. We hold that the search was not unreasonable, and we therefore reverse.

Officers of the Minneapolis Police Department (MPD) obtained a warrant to search Williams's home and person for drugs and firearms. On October 25, 2005, after observing Williams drive away from his home during daylight hours, MPD officers conducted a traffic stop on a busy street. A pat-down search revealed something inside Williams's pants, but the officers testified that they decided not to search Williams more extensively while on the street because they were concerned about his privacy. Instead, they took Williams into custody, placed him in a squad car, and drove him several blocks to the police department's Fourth Precinct building.

The officers took Williams to the precinct's rear parking lot, which was used for squad cars and vehicles belonging to employees. The parking lot is surrounded by the back of the precinct building, a brick wall, and a chain link fence topped with barbed wire. The neighborhood surrounding the precinct is mostly residential. After removing Williams from the squad car, an officer searched Williams in the parking lot. The officer, who was wearing a latex glove, opened Williams's pants, reached inside Williams's underwear, and retrieved a large amount of crack and powder cocaine near Williams's genitals. After the search, officers took Williams to an interview room in the precinct building and questioned him about the drugs. After receiving *Miranda* warnings, Williams admitted possessing crack and powder cocaine.

The district court suppressed the cocaine and Williams's statement to police, concluding that the search in the parking lot was unreasonable and that the search led directly to the inculpatory statement. The government appeals the district court's order. We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *United States v. Drapeau*, 414 F.3d 869, 873 (8th Cir. 2005).

## II.

The Fourth Amendment prohibits "unreasonable" searches. "The test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In determining reasonableness, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*.

There is no question that the police were justified in searching inside Williams's pants. The police possessed a warrant authorizing them to search his person for drugs and firearms, and an initial pat-down produced specific probable cause that Williams was hiding something inside his pants. The issue before us is whether the search was reasonable in its scope, manner, and location.

Williams makes two objections to the search. First, he claims it was unreasonably intrusive in its scope and manner because it involved physical contact with his genitals. We disagree. The police could not have removed the drugs that Williams stashed near his genitals without making some "intimate contact," and we reject Williams's claim that such contact is *per se* unreasonable. Some physical contact is permissible, and indeed unavoidable, when police reach into a suspect's pants to remove drugs the suspect has chosen to hide there. *See*, *e.g.*, *United States v. Williams*, 209 F.3d 940, 942, 944 (7th Cir. 2000) (upholding the removal of crack cocaine from area of suspect's buttocks); *State v. Smith*, 464 S.E.2d 45, 46 (N.C. 1995) (upholding the removal of cocaine from underneath suspect's scrotum) (adopting reasoning of *State v. Smith*, 454 S.E.2d 680, 682, 687 (N.C. Ct. App. 1995) (Walker, J. concurring in part and dissenting in part)).

This case is substantially different from *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001), cited by Williams, where police arrested a woman for a two-day old

misdemeanor noise violation, and a police officer conducted a search of the arrestee's exposed lower body that involved penetration of the genitals and kneading of the buttocks with an un-gloved hand. *Id.* at 359, 361. The Fourth Circuit understandably concluded that this search, which took place as the woman was standing in her front yard wearing only her nightgown, was "highly intrusive without any apparent justification." *Id.* at 361. The search of Williams was both less intrusive, as it involved no penetration or public exposure of genitals, and far more justified, as police had probable cause to believe he was carrying drugs inside his pants.

We disagree with Williams's claim that the police were required to avoid physical contact with him by directing him to disrobe and then visually inspecting his body for drugs. "A creative judge, engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished." *United States v. Sharpe*, 470 U.S. 675, 686-687 (1985). But the existence of "less intrusive means" does not, by itself, make a search unreasonable. *Id.* at 687; *Illinois v. Lafayette*, 462 U.S. 640, 647-648 (1983); *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973). While the potential for destruction of evidence is diminished when a suspect is in custody, it is not completely eliminated, and it was not unreasonable for the officers to assume the initiative by seizing the contraband that Williams secreted in his underwear, rather than allow Williams to disrobe and remove the drugs himself.

In this case, moreover, it is not clear that a full-blown strip search would have been less intrusive. A reasonable officer may well have concluded that the incidental contact that resulted from the search inside Williams's pants was a lesser intrusion on Williams's privacy than forcing him to strip and submit to an inspection of his private areas. *See Smook v. Minnehaha County*, 457 F.3d 806, 812 (8th Cir. 2006) ("It has been observed that strip searches requiring a person to disrobe completely have a uniquely invasive and upsetting nature.") (internal quotation and citation omitted). And the strip search that Williams recommends may not have avoided the need for

-4-

physical touching altogether, as police may have been required to search physically the area where Williams had placed the drugs to ensure that nothing remained.

If the scope and manner of the search was permissible, then Williams contends alternatively that it was constitutionally unreasonable for the officers to conduct the search in an area that was open to public view, rather than inside the station house. While this presents a closer question, we conclude that MPD officers took adequate precautions to protect Williams's privacy, and that the search in the parking lot caused no unreasonable "invasion of personal rights" in violation of the Fourth Amendment. *See Bell v. Wolfish*, 441 U.S. at 559.

The district court appeared to adopt a bright-line rule that "when a detainee ha[s] been secured, and travel to a station-house [is] possible, an on-street intimate inspection [is] an unconstitutional, unreasonable search." (R. Doc. 38, at 7). Such a *per se* rule strikes us as inconsistent with the balancing approach of *Wolfish* and the proposition that the availability of a less intrusive alternative does not necessarily prove unreasonableness. To be sure, our cases suggest that police officers should "take precautions to insure that a detainee's privacy is protected from exposure to others unconnected to the search," *Jones v. Edwards*, 770 F.2d 739, 742 (8th Cir. 1985), but *Jones*, like *Starks v. City of Minneapolis*, 6 F. Supp. 2d 1084 (D. Minn. 1998), analyzed whether police may conduct a strip search during which a suspect must expose fully his or her private areas. *Jones*, 770 F.2d at 740; *Starks*, 6 F. Supp. 2d. at 1088-1089. In contrast, a reach-in search of a clothed suspect does not display a suspect's genitals to onlookers, and it may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy. *See United States v. Ashley*, 37 F.3d 678, 682 (D.C. Cir. 1994) (holding reasonable a search in which police officer removed bag of drugs from suspect's underwear, where officer followed suspect from public bus station to side of station on street outside, and stood in front of suspect during search); *State v. Jenkins*, 842 A.2d 1148, 1151, 1158 (Conn. App. Ct. 2004) (holding that reach-in

search was reasonable where police searched suspect on side of a restaurant, out of public view, by pulling pants and underwear away from suspect's body to retrieve drugs); *State v. Smith*, 464 S.E.2d at 46 (upholding reach-in search on public roadway where officer used himself and car door to shield suspect from public view).

We believe that the officers took sufficient precautions to protect Williams's privacy before fulfilling their legitimate need to seize contraband that Williams had chosen to carry in his underwear. The police refrained from searching Williams on a public street, and instead took him to the more private precinct parking lot. The parking lot is partially secluded. It holds squad cars and the cars of police employees, and is surrounded by a chain link fence that is topped by barbed wire and covered to some degree with vegetation. The district court's findings of fact recounted uncontradicted testimony of police officer Randy Olson that no vehicles entered the lot during the search, and that he saw no person other than police officers – either inside or outside the parking lot – within eyesight of the brief search.

To the extent any citizen observed the search without notice of the police, there is no evidence that such a person would have seen the private areas of Williams's body or any contact between the gloved hand of the officer and Williams's genitals, which remained obscured from the view of passers-by. Rather, the citizen would have observed from a distance that an officer briefly reached inside Williams's pants and pulled out a bag of cocaine. We conclude that such a search does not unreasonably infringe on Williams's privacy interests when balanced against the legitimate needs of the police to seize contraband that he carried on his person.

\*　　　\*　　　\*

For the foregoing reasons, the district court's order suppressing evidence is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____

-6-