**Certiorari Granted, April 1, 2010, No. 32,263**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-030**

**Filing Date: February 8, 2010**

**Docket No. 28,034**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**TERRY WILLIAMS,**

      **Defendant-Appellant**.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**ROBLES, Judge.**

**{1}** Terry Williams (Defendant) challenges the district court's denial of his motion to suppress under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Additionally, Defendant claims ineffective assistance of counsel, and that his conditional plea was not entered into knowingly,

1

voluntarily, or intelligently. We conclude that the Fourth Amendment requires suppression and, accordingly, we do not reach Defendant's other arguments.

## I.      BACKGROUND

**{2}**      At the hearing on Defendant's motion to suppress, Officer Simbala testified that, on September 7, 2006, at approximately 4:00 p.m. while on patrol, he conducted a license plate check on Defendant's vehicle as it was parked in front of a residence. The check indicated that Defendant was the owner. The officer knew Defendant from "three or four" previous contacts, though he did not know it was Defendant's car at the time he checked the license plate. The officer then conducted a check on Defendant's name and discovered he had an outstanding felony warrant for his arrest. The officer then positioned himself nearby on another street and, after waiting approximately twenty minutes, observed Defendant in his car making a right-hand turn and driving through a stop sign without making a complete stop. Although the windows on Defendant's car were tinted, the officer identified Defendant as the operator of the vehicle by seeing through the untinted front windshield as Defendant drove toward the officer and by seeing Defendant through the driver's side window, which was down as Defendant passed by.

**{3}**      Officer Simbala testified that, after pulling Defendant over and approaching his vehicle, he noticed that Defendant's shoulders were moving, his hands were not up on the steering wheel, but were down low, and he appeared to be "fumbling around." He testified further that he thought Defendant was hiding something or grabbing a weapon. After making contact with Defendant and obtaining his "information," the officer again conducted a background check and confirmed the existence of an outstanding felony warrant. Officer Stephenson arrived on the scene. Officer Simbala asked Defendant to step out of the vehicle, placed him under arrest, and then handcuffed him. At that time, Officer Simbala noticed that Defendant's pants were unzipped, and "half of his shirt was sort of pulled through it." Defendant was placed  between the two police cars on the side of the street, and Officer Simbala performed a search of Defendant. Officer Simbala testified that, although he performed a pat-down of Defendant, which did not reveal anything he believed was a weapon, he faced Defendant, grabbed and shook his waistband, pulled the front of his pants outward six to eight inches, looked down, and observed and seized a plastic bag containing crack cocaine and heroin next to Defendant's genitals. At the time of the search, Officer Simbala was wearing gloves, and Officer Stephenson, a female, was standing behind Defendant and had "no way of seeing anything." Officer Simbala did not testify about the traffic conditions on the street at the time, whether there were members of the public watching the incident, or whether the public's view was obstructed during the search. Defendant testified on his own behalf and stated that the search was conducted around 4:25 in the afternoon at a "very busy intersection" with "hundreds and hundreds of people driving by."

**{4}**      At the end of the suppression hearing, the district court found there was probable cause for the officer to stop Defendant and found the search incident to his arrest was a

lawful search. Five days following the district court's denial of the motion to suppress, Defendant entered a plea of no contest to trafficking by possession with intent to distribute, reserving the right to appeal the denial of his motion to suppress.

## II.    DISCUSSION

**{5}**    On appeal, Defendant argues that (1) the search incident to his arrest was unreasonable under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution; (2) his trial counsel was ineffective; (3) his plea was not entered into knowingly or voluntarily; and (4) this Court should allow him to withdraw his plea and proceed to trial instead. We agree that the search was unreasonable under the Fourth Amendment, and we will not discuss Defendant's other issues.

**{6}**    An appellate court's review of a district court's ruling on a motion to suppress represents a mixed question of fact and law. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95. This Court will indulge all reasonable inferences that support the district court's decision, and all contrary evidence and inferences will be dismissed. *State v. Vandenberg*, 2003-NMSC-030, ¶¶ 17-18, 134 N.M. 566, 81 P.3d 19. However, whether the district court correctly applied the facts to the law is reviewed under a de novo standard. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**{7}**    The Fourth Amendment of the United States Constitution, made applicable to the State of New Mexico through the Fourteenth Amendment, guarantees individuals the right to be secure in "their persons, houses, papers, and effects, against all unreasonable searches and seizures." *Mapp v. Ohio*, 367 U.S. 643, 646-47 (1961) (internal quotation marks and citation omitted); *see Bell v. Wolfish*, 441 U.S. 520, 558 (1979) ("The Fourth Amendment prohibits only unreasonable searches[.]"). Likewise, Article II, Section 10 of the New Mexico Constitution protects the right of the people to be free from unreasonable searches and seizures. *State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. Both the New Mexico and United States Constitutions provide overlapping protection against unreasonable searches, so we apply the interstitial approach. *Rowell*, 2008-NMSC-041, ¶ 12. Under this approach, we first consider whether the United States Constitution "makes the challenged police procedures unlawful under the United States Constitution [and i]f so, the fruits usually must be suppressed [and i]f not, we next consider whether the New Mexico Constitution makes the search unlawful." *Id.* (citations omitted). We conclude that this search was unreasonable under the United States Constitution, and we therefore do not analyze the issue under our state constitution.

**{8}**    Because a warrantless search or seizure is presumed to be unreasonable, the State has the burden of showing that the search or seizure was justified by an exception to the warrant requirement. *State v. Vasquez*, 112 N.M. 363, 366, 815 P.2d 659, 662 (Ct. App. 1991). Recognized exceptions to the warrant requirement include exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit. *State v. Duffy*, 1998-NMSC-014, ¶ 61, 126 N.M. 132, 967 P.2d 807, *modified by State v. Gallegos*,

3

2007-NMSC-007, 141 N.M. 185, 152 P.3d 828. While the immediate case falls within the search incident to arrest exception, and Defendant does not challenge his arrest, he does challenge the reasonableness of the search that was conducted pursuant to his arrest.

**{9}** Full warrantless searches of persons and their clothing, incident to any lawful arrest, regardless of the circumstances leading up to the arrest, are not unreasonable. *United States v. Robinson*, 414 U.S. 218, 235 (1973). The justification for such broad searches incident to an arrest has been to allow officers to disarm arrestees in order to take them into custody and to prevent the destruction or concealment of evidence. *Id.* at 234; *see Chimel v. California*, 395 U.S. 752 (1969). However, even in searches such as this, the Fourth Amendment protects an arrestee's privacy interests in his person and prohibits intrusions that are not justified under the circumstances. *See Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979) (concluding that the Fourth Amendment to the United States Constitution prohibits unreasonable searches and requires a consideration of the circumstances in relation to the need for the particular search).

**{10}** In the instant case, Defendant asserts that the search underneath his clothing was not justified under the circumstances and was an unreasonable strip search. At the outset, we note that the United States Supreme Court has yet to address strip searches incident to an arrest. In *Illinois v. Lafayette*, the Court explicitly stated that "[w]e were not addressing . . . and do not discuss here, the circumstances in which a strip search of an arrestee may or may not be appropriate." 462 U.S. 640, 646 n.2 (1983).

**{11}** The First Circuit in *Blackburn v. Snow* noted that there are generally three types of strip searches:

> A "strip search," though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A "visual body cavity search" extends to visual inspection of the anal and genital areas. A "manual body cavity search" includes some degree of touching or probing of body cavities.

771 F.2d 556, 561 n.3 (1st Cir. 1985). Strip searches, therefore, have usually referred to the removal of the arrestee's clothing for inspection of the body. Black's Law Dictionary defines a strip search as "[a] search of a person conducted after that person's clothes have been removed, the purpose usu[ally] being to find any contraband the person might be hiding." *Black's Law Dictionary*, 1378-79 (8th ed. 2004). Some courts have determined that a "reach-in" search, where an individual remains clothed and the genitals are not exposed to onlookers, is something less than a "strip search." *See United States v. Williams*, 477 F.3d 974, 976-77 (8th Cir. 2007) (contrasting cases where a suspect is forced to expose "private areas" in a public place, and holding that a reach-in search was permissible because the police took "steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy," and concluding that a reach-in search of a clothed suspect is something less than a "full-blown strip search"); *Jenkins v. State*, 978 So. 2d 116, 126-28

4

(Fla. 2008) (concluding that where an officer "merely pulled the boxer shorts away from [the suspect's] body at the waist area and looked inside to discover the cocaine" and no body parts were publicly exposed, the search was not a strip search); *but see State v. Nieves*, 861 A.2d 62, 70 (Md. 2004) (acknowledging that a strip search is "any search of an individual requiring the removal or rearrangement of some or all clothing to permit the visual inspection of the skin surfaces of the genital areas, breasts, and/or buttocks" (internal quotation marks and citation omitted)); *State v. Jenkins*, 842 A.2d 1148, 1156 (Conn. App. Ct. 2004) (stating that a "reach-in" search is a type of "strip search").

**{12}**     After a review of the case law, we conclude that this is not a strip search, and how a reach-in search is categorized will not affect the analysis. The focus of our inquiry should be on whether the search was reasonable under the circumstances. The touchstone of Fourth Amendment analysis is the reasonableness of the governmental invasion of a citizen's personal security. *Terry v. Ohio*, 392 U.S. 1, 12 (1968). Although an officer of the law may have the right to search a suspect following an arrest, the search must still be reasonable. *Fontaine v. State*, 762 A.2d 1027, 1032-33 (Md. Ct. Spec. App. 2000) ("While the legal arrest of a person should not destroy the privacy of his premises, it does for at least a reasonable time and to a reasonable extent take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence. However, the right of police to make an unqualified search of an arrestee's person incident to an arrest is nevertheless limited in that any such search must still be reasonable." (internal quotation marks and citation omitted)). Reasonableness determinations can be elusive because "reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell*, 441 U.S. at 559. In determining the reasonableness of a search, each case requires a balancing of the government's need to conduct the search against the invasion of the individual's privacy rights. *Id.* Reviewing courts have considered (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted. *Id.* Accordingly, we follow other courts who have adopted the *Bell* factors in similar situations. *See Jenkins*, 842 A.2d at 1157; *Paulino v. State*, 924 A.2d 308, 316-17 (Md. 2007); *Nieves*, 861 A.2d at 73; *Fontaine*, 762 A.2d at 1033.

**{13}**     The justification for initiating the search in the instant case is inexorably tied with the scope of the intrusion as it was conducted. Accordingly, we analyze these two factors together. New Mexico courts have previously held that an officer needs no reason to conduct a search incident to an arrest. *Rowell*, 2008-NMSC-041, ¶ 25 n.1 ("Given the exigencies always inherent in taking an arrestee into custody, a search incident to arrest is a reasonable preventative measure to eliminate any possibility of the arrestee's accessing weapons or evidence, without any requirement of a showing that an actual threat exists in a particular case."). However, other courts have concluded that a justified warrantless search does not by itself give rise to the automatic right for a more intrusive search such as a reach-in. *See, e.g.*, *United States v. Bazy*, 1994 WL 539300, at *5 (D. Kan. 1994) (mem. and order). A majority of courts have determined that an officer needs additional reasonable suspicion in order to conduct the more intrusive search. *See, e.g.*, *Jenkins*, 842 A.2d at 1156

("It has been recognized that under the [F]ourth [A]mendment to the [United States C]onstitution, officers are permitted to strip[]search an individual when, subsequent to a lawful arrest and patdown, they have a reasonable suspicion that the individual is carrying a weapon or contraband."). In *People v. Jennings*, the court concluded:

> Strip searches of arrestees charged with misdemeanors or other minor offenses violate the Fourth Amendment of the United States Constitution unless there is a reasonable suspicion that the arrestee is concealing weapons or contraband based on the crime charged, the particular characteristics of the arrestee, or the circumstances of the arrest.

747 N.Y.S.2d 235, 236 (N.Y. App. Div. 2002); *see Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259, 270 (S.D.N.Y. 2002) ("While the Second Circuit has not spoken directly to the appropriate test for the validity of a strip search incident to a felony arrest, this [c]ourt recently opined that the [c]ourt of [a]ppeals would apply the particularized reasonable suspicion test to searches of felony arrestees as well, rather than permitting strip searches of all felony arrestees solely because they had been arrested for a felony.").

**{14}**     In the instant case, Defendant asserts that "Officer Simbala lacked any reasonable suspicion that [Defendant] was concealing evidence underneath his clothing and therefore lacked any justification" for the search. We do not agree. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836 (internal quotation marks omitted) (quoting *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038). "In determining whether reasonable suspicion exists, we examine the totality of the circumstances." *Duran*, 2005-NMSC-034, ¶ 23 (internal quotation marks and citation omitted). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. In the instant case, Officer Simbala testified that he observed Defendant moving in his vehicle as the officer approached. He testified further he suspected Defendant was getting a weapon or hiding something, that when Defendant exited the car, his pants were open with his shirt pulled through his zipper, and these actions led the officer to believe that Defendant may have been hiding something on his person. Defendant, however, testified in his own defense that his belt buckle may have been undone, but his pants were not, and Officer Simbala stated, "[l]et's see what you have" and lifted up his shirt and unbuttoned and opened his pants. Under our standard of review, we defer to the factual findings of the district court. The district court found the officer's testimony credible, and we are, therefore, unwilling to second-guess the district court's finding. In ruling, the district court was in a superior position to evaluate the credibility of the testimony. Although there may have been conflicting factual evidence regarding the justification and scope of the search, we will indulge all reasonable inferences that support the district court's factual findings and disregard all evidence that supports the contrary. Accordingly, we conclude

6

that, under the circumstances, there was sufficient justification to search Defendant, and the search was tailored to accommodate the reasons for the justification.

**{15}** Defendant also argues that the area searched was not within his immediate control and that once he was placed in handcuffs the situation was neutralized and there was no need for the search. However, the potential for the destruction of evidence may be diminished when an individual is in custody, but it is not eliminated, and an officer may assume the initiative by seizing contraband that an individual has chosen to hide in his underwear. *Williams*, 477 F.3d at 975. Our cases have previously held:

> Our search incident to arrest exception is a rule of reasonableness anchored in the specific circumstances facing an officer [and d]eciding whether there is a reasonable threat of a suspect being able to gain access to an area to get a weapon or evidence is the kind of decision officers are trained to make.

*Rowell*, 2008-NMSC-041, ¶ 24; *State v. Martinez*, 1997-NMCA-048, ¶ 7, 123 N.M. 405, 940 P.2d 1200 ("Even a handcuffed arrestee may be foolhardy enough to try to seize a nearby firearm."). In the immediate case, we cannot say that the reasons and justifications for the search, and the narrow scope of the intrusion in direct response to those justifications, were unreasonable under the unusual circumstances. Defendant's own conduct gave rise to the inference that something was hidden in the front of his pants.

**{16}** We next turn to the remaining *Bell* factors and consider the manner and place in which the search of Defendant was conducted. Our scope of inquiry is a narrow one. Specifically, we ask whether the facts as they were established in the district court justify the search as it was conducted. Defendant argues that no measures were taken to ensure his privacy interests, and the search was done in an unreasonable public location. The record reveals that, following the traffic stop, the search took place between two cars at approximately 4:25 p.m. We note that courts have taken into consideration whether individuals had their "private areas" exposed to the public, *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000), the location of the search, *United States v. Ashley*, 37 F.3d 678, 682 (D.C. Cir. 1994), the exigent circumstances justifying conducting the search, *Bazy*, 1994 WL 539300, *6, and whether any steps were taken to protect the individual's privacy, *State v. Smith*, 454 S.E.2d 680, 687 (N.C. Ct. App. 1995), *rev'd and dissent adopted*, 464 S.E.2d 45 (N.C. 1995) (order), *cert. denied*, 517 U.S. 1189 (1996). We begin by noting that Officer Simbala testified that nobody other than he and Defendant could see Defendant's genitals, and Defendant did not dispute this assertion. We therefore will focus our analysis on the location of the search, exigent circumstances, and measures taken to preserve privacy. Together, these factors attempt to balance the tension between the need for a particular search and the invasion of personal rights. *See Bell*, 441 U.S. at 558.

**{17}** The State argues that steps were taken to protect Defendant's privacy. However, Defendant argues that Officer Simbala never testified that any measures were taken to ensure

7

that the search would be out of the view of passing cars. A review of the record reveals that the issue of whether steps were taken to minimize Defendant's exposure was never brought up at the suppression hearing. We note, however, that Defendant admits he was placed between two cars before the search began and testified that Officer Stephenson was not nearby when the search took place.

{18}   In *Lafayette*, the United States Supreme Court noted that police conduct "that would be impractical or unreasonable[]or embarrassingly intrusive[]on the street[,] can more readily[]and privately[]be performed at the station. For example, the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street." 462 U.S. at 645. Extra caution has been placed on strip searches because they can be degrading and invasive. *See Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (en banc) (noting that "strip searches involving the visual inspection of the anal and genital areas [are] demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, [and] repulsive, signifying degradation and submission" (internal quotation marks and citation omitted)); *Deserly v. Dep't of Corrections*, 2000 MT 42, ¶ 19, 298 Mont. 328, ¶ 19, 995 P.2d 972, ¶ 19 (noting that being strip searched "is an embarrassing and humiliating experience" (internal quotation marks and citation omitted)). While a reach-in search may be something less than a strip search, it is clear that they are not a matter of course for searches incident to an arrest, and they often do involve a visual inspection and/or touching of intimate areas. The court in *Bazy* concluded that a search of two suspects on the side of the road between parked police cars was a public search, and it was intrusive. 1994 WL 539300, at *8. The court confirmed that a public and intrusive search is not commonplace and should be reserved for only the most unusual cases. *Id*. In that case, earlier attempts by the detained suspects to conceal evidence by kicking multiple packages of drugs out of their pants and under vehicles created sufficient exigencies that justified the search. *Id*. at *3, 6. Additionally, the officers testified that the search was conducted between two parked cars to protect the suspects' modesty, and an officer obstructed the public's view. *Id*. at *7.

{19}   We observe that other cases have taken into consideration the specific steps officers have taken to protect a suspect's modesty when exigent circumstances were lacking, or where exigent circumstances were weighed against the location of the search. *See Williams*, 477 F.3d at 976-77 (allowing a reach-in search of a suspect where police drove him several blocks to a parking lot in a residential area); *Williams*, 209 F.3d at 943 (holding that a reach-in search on the side of the road at night where the suspect was never disrobed or exposed to public view was no greater an intrusion than would have occurred at a police station); *United States v. Gordon*, 2008 WL 3540007, at *1 (D. Utah 2008) (mem. and order) (finding reasonable steps taken to protect privacy where a reach-in search occurred at night on the passenger side of a vehicle); *Jenkins*, 842 A.2d 1148 (walking the suspect to the side of a building and conducting a reach-in search struck the proper balance between the need for the search, and the manner in which it was conducted); *Smith*, 454 S.E.2d at 682 (holding that the search was not unreasonable where suspect's pants were pulled down in between an officer and an open car door at night); *Ashley*, 37 F.3d at 679 (determining that precautions

8

were taken to ensure that the suspect was not subjected to public embarrassment when a reach-in search was conducted at the side of a bus station).

**{20}**    In this case, we are mindful of the fact that the search was conducted in broad daylight at rush hour on the side of a street.  We cannot say that the search was not witnessed, that the officers took steps commensurate with the circumstances to diminish the potential invasion of Defendant's privacy, or that the exigencies of the situation demanded that the search be done in the moment and fashion that it was conducted.  The district court made no findings of fact regarding the location or the manner of the search, and the officer did not testify about the reasonableness of the location.  From the record, it is not clear to this Court whether this intrusive and public search of Defendant was conducted in view of the public, or whether members of the public observed the search.  From the testimony, we conclude that the facts of this case do not demonstrate the necessity for the immediate search in public under the totality of the circumstances, and the record is devoid of any exigency that would justify a search in this location.  While the availability of less intrusive means does not automatically transform an otherwise reasonable search into a Fourth Amendment violation, the lack of a demonstrated exigency and the public location in broad daylight during rush hour simply does not justify the reasonableness of this search's location or manner.  *Lafayette*, 462 U.S. at 647.  The State did not carry its burden to demonstrate that this particular situation required or allowed the officers to conduct this particular search in this particular manner because of exigency or location.

**{21}**    In this case, it is not clear that the district court even considered the reasonableness of the location, or the manner in which the search was conducted. There is no evidence in the record regarding whether (1) Defendant was standing perpendicular or parallel to traffic, (2) traffic was at a gridlock or passing by at a high rate of speed, or (3) there were pedestrians in the vicinity. The only evidence regarding details of the location of the search came from Defendant, who stated that it was a busy intersection, and there were hundreds of people driving by.  While we will indulge in reasonable, factual inferences that support the district court's decision, the inferences in this case are not reasonable and tend to support the conclusion that passers-by witnessed this search.  Whether the district court correctly applied the facts to the law is reviewed under a de novo standard.  *Urioste*, 2002-NMSC-023, ¶ 6.    The United States Constitution protects individuals from unreasonable and intrusive searches in public. Without evidence of an exigent situation, we decline to interpret the Constitution in a manner that would allow public intrusive searches as the norm.  Government actors must have a healthy respect for a suspect's privacy interests.  Under the circumstances, absent an affirmative showing of the reasonableness of a search, the State has failed to carry its burden.

**{22}**    As a final matter, we address the Dissent.  The Dissent begins by questioning whether this matter was preserved.  Although it is noted that the State never questioned the issue of preservation in its answer brief, and it is generally not appropriate for this Court to raise preservation sua sponte, the Dissent nevertheless concludes that we should be hesitant

to make new law on a less than "fully developed" record.  We make several observations about this.

**{23}**   First, it would appear from the record that Defendant believed that this particular search violated his rights and that his counsel disagreed.  The record reveals that Defendant filed a pro se motion for new counsel and, at the hearing on that motion, the point of contention was that Defendant thought his counsel should file a motion to suppress because the search was an unreasonable strip search, and his counsel thought otherwise.  His counsel stated that she thought the search was a standard search incident to arrest, and there was no merit in a suppression motion.   In his own defense, Defendant stated to the court:

> [My attorney] wants me to believe by me having a warrant that I don't have any rights and that the officer had the right to open my pants and go through my underwear and put his hand down in my private areas searching for contraband in front of hundreds of people.  That's not a reasonable search and what an unreasonable search produces doesn't make it reasonable.
>
> So I'm not arguing that he didn't have a right to search me. He can search me, but he can't open up my clothes and go inside my private areas for contraband and do a strip search on a city street corner.  And that's the difference between me and [my attorney].

**{24}**   At the end of the hearing, the court allowed substitute counsel.  Several months later, Defendant's new counsel filed a motion to suppress that was written by Defendant acting pro se.  The clearly worded motion expressed the substance of Defendant's argument—that a public strip search is unreasonable.  We also note that the State filed a response to Defendant's pro se motion to suppress, in which the State argued directly on point that the search was made pursuant to a lawful arrest.  All parties should have been aware that the heart of the motion to suppress was the extent to which the officer conducted his search, and the extent to which such a search was reasonable in public.

**{25}**   On appeal to this Court, one of Defendant's contentions is that he received ineffective assistance of counsel.  His claims include that his attorney failed to file a motion on his behalf, which forced Defendant to file his own pro se motion; and that his attorney failed to argue the substance of his motion at the suppression hearing.  Because we conclude that the issue was clearly preserved and dispositive, we have declined to reach the ineffective assistance of counsel claim.

**{26}**   To the extent that the Dissent argues that the record is deficient and this Court should therefore not address the issue, we disagree.  The burden is on the State to make a sufficient record.  A defendant should not be required to spot the issues, file the motions, and direct arguments of counsel.  The lack of any development is testament to the State's failure.

**{27}** Next, the Dissent points out that the officer had reasonable suspicion to look in Defendant's pants; a point with which we agree. However, the officer testified that the search into Defendant's pants occurred after the pat-down and that the pat-down did not reveal anything that led the officer to believe that he had a "weapon of any kind." The facts as established do not demonstrate a showing of exigent circumstances sufficient to justify searching Defendant in the intrusive and public manner that occurred. No facts were established by the State that Defendant was suspected of having a weapon after the pat-down, or that he had attempted to destroy evidence. We therefore cannot hold that the mere suspicion of possession of contraband, without more, is sufficient to create exigency that would allow public searches of this nature.

## III.    CONCLUSION

**{28}** For the reasons stated above, we reverse the district court's denial to suppress and remand for further proceedings consistent with this Opinion.

**{29}    IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**


**I CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

**CYNTHIA A. FRY, Chief Judge, dissenting**

**FRY, Chief Judge (dissenting).**

**{30}** I do not agree that the district court's denial of Defendant's suppression motion should be reversed. I do not think that Defendant adequately preserved his argument that the circumstances of the search were unreasonable. In addition, even if Defendant had properly preserved his challenge, I would conclude that the search as undertaken struck the appropriate balance between Defendant's privacy interests and the public's interest in safety and the preservation of evidence.

**{31}** The transcript of the suppression hearing establishes that the litigants and the district court did not focus on the reasonableness of the search. Instead, the testimony and counsel's arguments surrounded the validity of the traffic stop. The testimony comprises forty-three pages of the transcript, and of those forty-three pages, only seven pages contain testimony regarding the circumstances surrounding the search. Defense counsel's closing argument

comprises almost three pages of the transcript, yet the only argument made regarding the search consisted of the following sentences: "The search, itself[,] was overly intrusive. . . . [T]here was no reason for him to put his hand down [Defendant's] pants, and fumble around his private areas looking for drugs." Defense counsel made no argument at all about the area where the search took place, and he certainly did not contend that the officers failed to take reasonable steps to protect Defendant's privacy. Defense counsel did not cite a single case on the issue of strip searches or reach-in searches.

**{32}**    Generally speaking, I do not think it is appropriate for this Court to raise lack of preservation on our own initiative because I view that to be the responsibility of the appellee, and the State does not raise this issue in this case. However, on a record as deficient as this one, I believe we should be reluctant to establish the constraints on the police officer's conduct that the majority has adopted. This is an issue of first impression in New Mexico jurisprudence, and I think we should make new law only on the basis of a fully developed record.

**{33}**    That being said, even if Defendant's offhand argument below could be deemed adequate preservation, I would conclude that the search was reasonable under the circumstances. The testimony of the only witness found to be credible, Officer Simbala, established reasonable suspicion (acknowledged by the majority) that Defendant may have concealed a weapon or contraband in his pants. Defendant was placed between the police car and Defendant's vehicle, and Officer Simbala then pulled the waistband of Defendant's pants out—not down. Defendant himself acknowledged that only he and Officer Simbala could see Defendant's genitals. Upon seeing the baggy in Defendant's underwear, Officer Simbala reached in with a gloved hand and removed the baggy. Given the possibility that Defendant might have concealed a gun in his pants, it was reasonable for Officer Simbala to find and remove the concealed item immediately after he arrested Defendant and certainly before attempting to transport Defendant in the patrol car. *See Rowell*, 2008-NMSC-041, ¶ 13 (explaining that "searches incident to arrest have been considered reasonable because of the practical need to prevent the arrestee from destroying evidence or obtaining access to weapons"). In my view, this possibility constituted an exigency supporting the search as it was conducted. Even if the officers could have walked Defendant to a more private location before conducting the search, "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means." *Lafayette*, 462 U.S. at 647 (internal quotation marks omitted). As the court noted in *Bazy*, "[w]hile plainly more than a pat-down search, the intrusion here was still limited in scope. [D]efendant . . . was not required to disrobe or to submit to a visual body cavity search." 1994 WL 539300, *7. Consequently, I would hold that Officer Simbala's search struck the appropriate balance between Defendant's privacy interests and concern for the public's safety and the preservation of evidence. I would affirm.

**CYNTHIA A. FRY, Chief Judge**

**Topic Index for** *State v. Williams*, **No. 28,034**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-PR | Privacy |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| | |
| CA | CRIMINAL PROCEDURE |
| CA-EC | Exigent Circumstances |
| CA-MR | Motion to Suppress |
| CA-SZ | Search and Seizure |
| CA-SR | Search Incident to Arrest |
| CA-WA | Warrantless Arrest |
| CA-WS | Warrantless Search |
| | |
| **EV** | **EVIDENCE** |
| EV-SU | Suppression of Evidence |