# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMSC-026**

**Filing Date: June 15, 2011**

**Docket No. 32,263**

**STATE OF NEW MEXICO,**

> **Plaintiff-Petitioner,**

**v.**

**TERRY WILLIAMS,**

> **Defendant-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jacqueline Cooper, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**SERNA, Justice.**

{1}     We granted certiorari to resolve the question of whether the Fourth Amendment to the United States Constitution prohibits an under-clothing search as part of a search incident to arrest when the arresting officer has reason to suspect that the arrestee is concealing a weapon or contraband under his or her clothing.  The State appeals the holding of the Court of Appeals that the roadside search of Defendant Terry Williams, incident to his arrest on an outstanding felony warrant, violated the Fourth Amendment.  We adopt and apply the reasonableness factors articulated in *Bell v. Wolfish*, 441 U.S. 520 (1979), and conclude the

officer had reasonable suspicion to conduct an under-clothing search and the search was reasonable under the Fourth Amendment. The Court of Appeals' opinion is reversed.

## I.  BACKGROUND

{2}  Defendant was stopped for a traffic violation and subsequently arrested on an outstanding felony warrant. The Second Judicial District Court held a suppression hearing at which both the arresting officer and Defendant testified. The district court ruled from the bench that it found the officer's testimony credible. Because this Court defers "to the district court's review of the testimony and other evidence presented," *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861, unless otherwise noted, the factual background presented below is drawn from the testimony of the arresting officer at the suppression hearing.

{3}  The traffic stop occurred in Albuquerque, on University near Gibson, across the street from a church parking lot. As the officer who conducted the stop approached the vehicle, he saw through the open window that Defendant's hands were removed from the steering wheel and his shoulders were moving as if he were "fumbling around" with an object. Based on his ten years of training and experience, the officer found these actions to be consistent with concealing contraband or searching for a weapon. After obtaining Defendant's information and running a background check, the officer confirmed that an outstanding felony arrest warrant existed for Defendant.

{4}  A female backup officer arrived at the scene of the stop. The arresting officer asked Defendant to exit the vehicle; when Defendant did so, his pants were unzipped and his belt unbuckled. Pursuant to the warrant, Defendant was placed under arrest and handcuffed. Defendant was placed between the two police cars parked bumper-to-bumper on the side of University, with the female officer standing between the two cars, facing away from Defendant, and Defendant standing between the two officers. The arresting officer patted Defendant down incident to the arrest, and then shook the waistband of Defendant's pants. The officer pulled the waistband of Defendant's pants and underpants outward six to eight inches, looked down, and saw a plastic bag underneath Defendant's underpants. The officer, with a gloved hand, reached down and removed the bag; the bag's contents later tested positive as illegal substances.

{5}  The female officer did not observe the search of Defendant. Although Defendant testified that the search occurred on a busy street, there was no testimony by either the officer or Defendant that any other individual, such as a pedestrian or passing driver, could see underneath Defendant's clothing.

{6}  The district court concluded that the search of Defendant was a lawful search incident to arrest and denied the suppression motion. Defendant entered a plea of no contest to trafficking by possession with intent to distribute, reserving his right to appeal the denial of the motion to suppress.

**{7}** To the Court of Appeals, Defendant alleged four points of error: (1) that the under-clothing search incident to his arrest was unreasonable under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution; (2) that he received ineffective assistance of counsel; (3) that his plea agreement was not entered into knowingly or voluntarily; and (4) that his plea should be withdrawn and his case should proceed to trial. *State v. Williams*, 2010-NMCA-030, ¶ 5, 148 N.M. 160, 231 P.3d 616. The Court of Appeals determined that the search was unreasonable under the Fourth Amendment and did not reach Defendant's other issues. *Id.* ¶¶ 1, 21. Judge Fry dissented on the grounds that Defendant had not preserved the argument that the search was unreasonable, but, if the issue was preserved, then the search did not run afoul of the Fourth Amendment because the officer had developed reasonable suspicion that Defendant had concealed a weapon in his pants and the search was limited in scope. *Id.* ¶ 30.

## II. DISCUSSION

### A. Standard of Review

**{8}** The review of a denial of a motion to suppress presents a mixed question of fact and law. *Leyva*, 2011-NMSC-009, ¶ 30. We review the factual basis of the court's ruling for substantial evidence, deferring to the district court's view of the evidence. *Id.* When, as here, there are no findings of fact and conclusions of law, we "draw all inferences and indulge all presumptions in favor of the district court's ruling." *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856. Our review of the legal conclusions of the district court, however, is de novo. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95. "Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness." *Id.* ¶ 10 (internal quotation marks and citation omitted).

### B. Preservation

**{9}** Under Rule 12-216(A) NMRA, "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]" In his pro se motion to suppress, on which we commend Defendant, Defendant argued that the search under his clothing violated the Fourth Amendment. Although the parties did not, as noted by Judge Fry in her dissent, "focus on the reasonableness of the search" at the suppression hearing, *Williams*, 2010-NMCA-030, ¶ 31, Defendant's motion to suppress properly preserved the Fourth Amendment argument. *See State v. Javier M.*, 2001-NMSC-030, ¶ 9, 131 N.M. 1, 33 P.3d 1.

### C. Fourth Amendment Reasonableness of Under-Clothing Searches

**{10}** The Fourth Amendment requires all searches and seizures be executed in a reasonable manner. *See Leyva*, 2011-NMSC-009, ¶ 9. Reasonableness depends "on a

3

balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Penn. v. Mimms*, 434 U.S. 106, 109 (1977) (internal quotation marks and citation omitted). It is well established that the Fourth Amendment is not violated when an officer conducts a warrantless pat-down incident to arrest to ensure officer safety and prevent the destruction of evidence, and Defendant does not challenge the constitutionality of the initial pat-down he received. *See United States v. Robinson*, 414 U.S. 218, 234 (1973); *Rowell*, 2008-NMSC-041, ¶ 13. It is undisputed, however, that the search in this case extended beyond a pat-down of Defendant's outer clothing. When a more invasive search is conducted, it is not presumed to be reasonable simply because it occurs incident to an arrest. *See Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001); *United States v. Scott*, 987 A.2d 1180, 1195 (D.C. 2010).

**{11}**     To guide the reasonableness analysis of more intrusive searches, such as the under-clothing search that occurred in this case, courts review the factors articulated by the United States Supreme Court in *Bell*: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." 441 U.S. at 559 (setting forth the factors to determine the reasonableness of strip and visual body cavity searches of detainees). *See, e.g.*, *Amaechi*, 237 F.3d at 361; *Hill v. Bogans*, 735 F.2d 391, 393-94 (10th Cir. 1984); *Scott*, 987 A.2d at 1195; *State v. Nieves*, 861 A.2d 62, 71 (Md. 2004); *People v. Hall*, 886 N.E.2d 162, 166 (N.Y. 2008); *State v. Battle*, 688 S.E.2d 805, 812 (N.C. Ct. App. 2010). We approve the Court of Appeals' incorporation of the *Bell* factors into New Mexico jurisprudence to consider whether the search of Defendant was reasonable under the Fourth Amendment. *Williams*, 2010-NMCA-030, ¶ 12.

**{12}**     Before discussing the *Bell* factors in the context of Defendant's search, we resolve the question of the minimum quantum of suspicion required to justify an under-clothing search conducted incident to an arrest.[1] Although the United States Supreme Court has not addressed directly the question of the level of proof necessary to justify a search more intrusive than a pat-down,[2] the weight of authority supports a requirement of reasonable

---

[1] The parties and the Court of Appeals, 2010-NMCA-030, ¶ 11, spend a good deal of time discussing the proper nomenclature for the search of Defendant. Although we cite cases that do so, we do not feel it necessary to label the search a "reach-in," "strip search," or something else, as the *Bell* test is inherently one of reasonableness under the circumstances. *See Stanley v. Henson*, 337 F.3d 961, 964 n.2 (7th Cir. 2003) ("Whether the procedure at issue here was a 'strip search' or just a 'search' more appropriately goes to the question of the scope or manner of the intrusion involved.").

[2] In *Bell*, the searches were found to be permissible "on less than probable cause," 441 U.S. at 560, though three dissents would have required a specific justification, *see id.* at 563 (Powell, J., concurring in part and dissenting in part) ("at least some level of cause, such as reasonable suspicion"); *id.* at 578 (Marshall, J., dissenting) (requiring a showing of compelling necessity); *id.* at 595 (Stevens, J., dissenting) (requiring a showing of probable

4

suspicion that the arrestee is concealing a weapon or contraband underneath his or her clothing before an under-clothing search is conducted. *See State v. Jenkins*, 842 A.2d 1148, 1156 (Conn. App. Ct. 2004) (adopting the requirement that an officer have reasonable suspicion "that the individual is carrying a weapon or contraband" prior to conducting a strip search); *Scott*, 987 A.2d at 1196-97 (stating that the majority of courts which have considered the issue require at least reasonable suspicion of an attempt to hide contraband or a weapon before permitting a strip search).

**{13}**     A search incident to arrest is a reasonable warrantless search because courts have long acknowledged that the societal interest in preventing the destruction of evidence and protecting the arresting officer outweighs the minimal intrusion of a pat-down. *Rowell*, 2008-NMSC-041, ¶¶ 13-14 (stating that the search incident to arrest traditionally is limited by "the exigencies which justify its initiation" (quoting *Terry v. Ohio*, 392 U.S. 1, 26 (1968)). An under-clothing search, however, is different. *See Safford United Sch. Dist. #1 v. Redding*, ___ U.S. ___, ___, 129 S. Ct. 2633, 2641 (2009) (discussing an under-clothing search of a student and stating that "both subjective and reasonable societal expectations of personal privacy support the treatment of such a search as categorically distinct, requiring distinct elements of justification on the part of school authorities for going beyond a search of outer clothing and belongings"); *see also Schmerber v. Cal.*, 384 U.S. 757, 769-70 (1966) (distinguishing a warrantless blood draw from a pat-down and stating that "[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained"). In the context of a strip search of a visitor to a prison, our Court of Appeals determined that reasonable suspicion of the presence of weapons or contraband on the visitor's body was necessary to justify an "embarrassing and humiliating" strip search. *State v. Garcia*, 116 N.M. 87, 89, 860 P.2d 217, 219 (Ct. App. 1993) (quoting *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982)). The Court stated that the reasonable suspicion standard "is flexible enough to afford the full measure of fourth amendment protection without posing an insuperable barrier to the exercise of all search and seizure powers." *Id.* (quoting *Hunter*, 672 F.2d at 674).

**{14}**     While we acknowledge that some courts have required probable cause before an invasive search is conducted, *see, e.g.*, *United States v. Bazy*, 1994 WL 539300, *6 (D. Kan. 1994), *aff'd*, 82 F.3d 427 (10th Cir. 1996); *Battle*, 688 S.E.2d at 815, we conclude that reasonable suspicion is the proper standard to justify an under-clothing search. We hold that a search incident to arrest that involves an officer removing or looking under any part of an arrestee's clothing requires, at a minimum, particularized reasonable suspicion that the arrestee is concealing a weapon or evidence that is susceptible to destruction before arriving at the police station.

**{15}**     We now apply the *Bell* factors to address the reasonableness of the under-clothing search of Defendant. These factors—justification, scope, manner, and place—are reviewed

_____

cause).

within the context of the totality of the circumstances surrounding the under-clothing roadside search of Defendant. *See State v. Sewell,* 2009-NMSC-033, ¶ 1, 146 N.M. 428, 211 P.3d 885. The determination of whether a search was reasonable is based on what did happen, not whether the officers could have conducted the search differently. *See United States v. Sharpe,* 470 U.S. 675, 686-87 (1985) ("A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable." (internal quotation marks, citation, and alteration omitted)).

{16}    As discussed above, the minimum justification to conduct an under-clothing search as part of a search incident to arrest is reasonable suspicion that the arrestee is armed or hiding contraband.[3]   The Court of Appeals determined that the officer had reasonable suspicion that Defendant was hiding a weapon or contraband in his underpants based on the officer's observations of Defendant's furtive movements after stopping and Defendant's exiting the car with his pants in disarray. *Williams,* 2010-NMCA-030, ¶ 14. After reviewing the record, deferring, as did the Court of Appeals, to the district court's determination that the officer's testimony was credible, we agree that substantial evidence supports this conclusion. *Compare Jenkins v. State,* 978 So. 2d 116, 127-28 (Fla. 2008) (deferring to the trial court's factual findings, supported by the record, that the officer was justified in conducting a search of a suspect's underpants for drugs after a pat-down revealed no drugs but the officer had reasonable suspicion that the defendant was secreting drugs on his body), *with Paulino v. State,* 924 A.2d 308, 319 (Md. 2007) (concluding the record did not contain sufficient evidence to support the existence of exigent circumstances justifying a more intrusive search, as there was no testimony that the defendant was attempting to destroy evidence or in possession of a weapon, particularly as the officers did not conduct a pat-down before proceeding to the strip search).

{17}    The Court of Appeals concluded that the scope of the search was narrowly tailored based on the officer's reasonable suspicion that Defendant was concealing a weapon or contraband. *Williams,* 2010-NMCA-030, ¶ 14. We agree. The officer had reasonable suspicion that Defendant was concealing an object in his underpants; the officer limited his under-clothing search to the specific area in which he suspected a weapon or contraband was hidden. *See United States v. Williams,* 477 F.3d 974, 975-76 (8th Cir. 2007) (concluding that the scope of the search was not unreasonably intrusive because the officers believed that the defendant was hiding something in his underpants and limited the search to that area of the

---

[3] The justification for the initial stop is not necessarily a part of this analysis, though it may be. We reject Defendant's suggestion that we never permit invasive searches when the initial stop was for a crime for which no evidence could be hidden, e.g., a traffic stop. Such a per se rule would ignore the fact that officers must be able to adjust their investigation as the circumstances of the stop evolve. *See Leyva,* 2011-NMSC-009, ¶ 10.

body, and though the defendant's genitals were touched in the search, "it involved no penetration or public exposure of genitals").

{18}    The Court of Appeals determined that the State did not carry its burden to prove that the manner of the search was reasonable. *Williams*, 2010-NMCA-030, ¶ 21. The district court credited the officer's testimony that he pulled Defendant's waistband outwards, saw a plastic bag, and used a gloved hand to remove the bag, and that no other person saw down Defendant's pants. The manner of the search was reasonable under the circumstances. *See Williams*, 477 F.3d at 977 ("[A] reach-in search of a clothed suspect does not display a suspect's genitals to onlookers, and it may be permissible if police take steps commensurate with the circumstances to diminish the potential invasion of the suspect's privacy."); *Bazy*, 1994 WL 539300, *7 (finding a search reasonable when the officer wore gloves, pulled the defendant's pants outward, and reached in to the underpants to remove drugs). We disagree with the Court of Appeals' inference that "passers-by witnessed [the] search." *Williams*, 2010-NMCA-030, ¶ 21. The evidence presented, viewed in the light most favorable to the district court's ruling, supports the inference that no one other than Defendant and the searching officer saw underneath Defendant's clothes; any occupant of a passing car would have caught a glimpse of a search incident to arrest, as the more invasive aspect of the search was conducted with adequate steps to preserve Defendant's privacy. While we recognize that the Fourth Amendment analysis does not turn on whether a search had witnesses, *see Battle*, 688 S.E.2d at 814, the scope of the search of Defendant properly minimized the invasion of Defendant's privacy.

{19}    The final *Bell* factor, the location of the search, also was found to be unreasonable by the Court of Appeals. *Williams*, 2010-NMCA-030, ¶ 20. Defendant was searched on the side of the road, protected from the public's eye by the police cars and the officers themselves. In *Bazy*, a case relied upon by the Court of Appeals, *Williams*, 2010-NMCA-030, ¶ 18, the court determined that the location of the search was reasonable under the circumstances and properly limited the intrusion into the defendant's privacy rights. *Bazy*, 1994 WL 539300, *7. The search in *Bazy* was conducted in a location similar to the one at issue in this appeal, and the officers acted to ensure that "[p]ublic view was blocked by the defendant's clothes, a trooper, and the cars" on the side of the road where the stop occurred. *Id.* The justification for the search of Defendant, reasonable suspicion of destructible evidence or weapons, required an immediate search, and the officers took adequate steps to minimize the invasion of Defendant's privacy. The Court of Appeals erred by concluding that further evidence of an exigent circumstance is necessary, *Williams*, 2010-NMCA-030, ¶ 21, when the arresting officers have reasonable suspicion that the arrestee is concealing weapons or evidence underneath her or his clothing and the search is conducted in a location that minimizes the invasion of the arrestee's privacy interests.

{20}    While analysis of the *Bell* factors support the conclusion that the search of Defendant was reasonable, the ultimate determination of Fourth Amendment reasonableness depends on the balance between the public and private interests at stake. The public interest in this case is that which justifies the search incident to arrest power as a "reasonable preventative

7

measure to eliminate any possibility of the arrestee's accessing weapons or evidence." *Rowell*, 2008-NMSC-041, ¶ 25 n.1; *see also State v. Ketelson*, 2011-NMSC-023, ¶ 19, ___ N.M. ___, ___ P.3d ___ (No. 32,170, May 20, 2011) (concluding that the Fourth Amendment is not violated by an officer's temporary removal of a gun from a vehicle when the officer possesses a reasonable belief that an occupant's ready access to the gun during a traffic stop poses a danger to officer safety). Defendant's interest is, of course, the expectation of privacy in his genitalia, and "the Fourth Amendment protects against the infringement of 'an expectation of privacy that society is prepared to consider reasonable.'" *State v. Rivera*, 2010-NMSC-046, ¶ 16, 148 N.M. 659, 241 P.3d 1099 (quoting *United States v. Jacobsen*, 446 U.S. 109, 113 (1984)); *see Battle*, 688 S.E.2d at 813 ("[D]eeply imbedded in our culture is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their private parts observed or touched by others." (internal quotation marks, citations, and ellipsis omitted)). Based on our review of the *Bell* factors, the under-clothing search of Defendant protected the public interest at stake without unreasonably violating Defendant's expectation of privacy under the Fourth Amendment. *See Jenkins*, 978 So. 2d at 128 (applying the *Bell* factors to conclude that "the very limited intrusion into [the defendant's] clothing was clearly outweighed by the need for law enforcement to retrieve the contraband before it could be discarded or destroyed"). Although the district court ruled that the search was a reasonable search incident to arrest and did not review the under-clothing search separately for reasonableness, the district court reached the correct result and must be affirmed. *See State v. Wilson*, 2011-NMSC-001, ¶ 20, 149 N.M. 273, 248 P.3d 315.

**{21}** We hold that the under-clothing search of Defendant passes constitutional muster because the officer had particularized reasonable suspicion that Defendant was concealing a weapon or evidence, and the location, manner, and scope of the search were reasonable under the circumstances. Invasive, under-clothing searches remain the exception, and this Opinion is not to be read as an approval of the incorporation of an under-clothing search into the typical search incident to arrest. We reject any suggestion that our holding would permit invasive searches for all felony drug offenses, as such would be inconsistent with our preference for case-by-case reasonableness analyses based on the totality of the circumstances. *See, e.g., Leyva*, 2011-NMSC-009, ¶ 54.

## III. CONCLUSION

**{22}** For the foregoing reasons, we reverse the opinion of the Court of Appeals. Because we granted certiorari only on the issue of whether the search violated Defendant's rights under the Fourth Amendment, we remand this case to the Court of Appeals for consideration of the other issues Defendant raised on appeal.

**{23}** **IT IS SO ORDERED.**

_____
**PATRICIO M. SERNA, Justice**

8

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Williams_, Docket No. 32,263**

| **CT** | **Constitutional Law** |
| --- | --- |
| CT-FA | Fourth Amendment |
| | |
| **CA** | **Criminal Procedure** |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |
| CA-WS | Warrantless Search |