Certiorari Granted, November 2, 2012, No. 33,763

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-111

Filing Date: July 26, 2012

Docket No. 30,600

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

DANIEL ALMANZAR,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Neil C. Candelaria, District Judge

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant appeals the district court's denial of his motion to suppress evidence removed from his pocket during a pat-down search. The district court found that the evidence was discovered in a legal pat-down search and that in any event, it would have been inevitably discovered in a search incident to arrest for the misdemeanor domestic battery charge. We conclude that the removal of evidence from Defendant's pocket exceeded the

scope of a legal pat-down search for weapons. In addition, the officers were not statutorily authorized to arrest Defendant for misdemeanor domestic battery without a warrant because the arrest was not at the scene of the domestic disturbance. We therefore reverse and remand.

## BACKGROUND

**{2}** We set forth the underlying events in the light most favorable to the ruling rendered below. *See State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785. On December 1, 2007, Officers Fuller and Crafton of the Albuquerque Police Department were dispatched to Central and San Pedro in Albuquerque to respond to a call regarding a domestic violence incident between Defendant and his live-in girlfriend (Victim) in the parking lot at Tingley Coliseum. At the time the officers were dispatched to investigate, Victim and Defendant had both left the Tingley Coliseum parking lot and gone to two separate locations. Officer Fuller located Victim outside a Walgreens store. Officer Crafton and Officer Cortesi located Defendant at a nearby Circle K convenience store. The officers located both Victim and Defendant within seven minutes after receiving the dispatch.

**{3}** When Officer Fuller approached Victim, she was crying and holding her lower abdomen on the left side. She said Defendant had kicked her at the Tingley Coliseum parking lot, and she had walked to Walgreens to call the police. Victim knew that Defendant had also walked away from the parking lot, but she did not believe that Defendant followed her from the parking lot. Victim did not feel threatened by Defendant after they separated.

**{4}** When Officer Crafton and Officer Cortesi approached Defendant at the Circle K, Defendant put his hands in his front pockets and refused to remove them. At that time, neither officer had any reason to believe Defendant was armed. However, because Defendant was a suspect in a domestic violence incident, the officers escorted him outside, handcuffed him, and conducted a pat-down search for weapons. Defendant was cooperative and non-threatening during the pat-down search. Officer Crafton did not locate any weapons during the pat-down search, but he did feel and remove a hard "golf ball-size thing" from the right pocket of Defendant's pants. Officer Crafton did not believe that the object in Defendant's pocket felt like a knife or a firearm. Nonetheless, Officer Crafton chose to remove the object from Defendant's pants because he did not know what it was. The object appeared to be powdered cocaine.

**{5}** Defendant was handcuffed and placed under arrest for possession of a controlled substance with intent to distribute. *See* NMSA 1978, § 30-31-20(A)(3) (2006). Officer Crafton chose to book Defendant only for the felony of possession of the cocaine and not the misdemeanor domestic battery because it was a more serious charge. Had he not conducted the original pat-down search of Defendant, Officer Crafton testified that he would have arrested Defendant on the domestic battery charge and then conducted a search incident to that arrest.

2

**{6}** Defendant moved to suppress the cocaine found in his pocket on the grounds that the search violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. At the hearing, Defendant argued that Officer Crafton did not have grounds to conduct a protective pat-down for weapons and that he exceeded the scope of any protective pat-down by removing an object that was clearly not a weapon. Defendant also asserted that the officers did not have grounds to conduct a search incident to a warrantless arrest because Defendant was not "at the scene" (the Tingley Coliseum parking lot) of the domestic disturbance when he was arrested. He points out that the exception to the warrant requirement set forth in NMSA 1978, Section 31-1-7(A) (1995) only permits a warrantless arrest when the officer is located "at the scene" of the domestic disturbance.

**{7}** The district court did not enter any written findings of fact or conclusions of law. Instead the court simply denied Defendant's motion to suppress. At the suppression hearing, the court orally concluded that the officers were justified in conducting a pat-down search and removing the cocaine from Defendant's pocket. The court said that the conduct was justified because the officers were investigating a claim of domestic violence and because Defendant's refusal to remove his hands from his pockets was "curious." The district court further concluded that the officers conducted a de facto arrest for domestic violence when they placed Defendant in handcuffs outside the Circle K convenience store, and that the officers were statutorily authorized to arrest Defendant at that time. In doing so, the district court chose to broadly interpret the "at the scene" language in Section 31-1-7(A) to include the general vicinity or area where the incident occurred. Defendant entered a conditional plea to trafficking cocaine (possession with intent to distribute) reserving his right to appeal the denial of his motion to suppress.

## DISCUSSION

### A.      Standard of Review

**{8}** We review the denial of a motion to suppress as a mixed question of fact and law. *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. The appellate courts "review the factual basis of the court's ruling for substantial evidence, deferring to the district court's view of the evidence." *Id.* However, our review of the district court's legal conclusions is de novo. *Id.*

### B.      The Warrantless Search of Defendant

**{9}** On appeal, Defendant argues that the district court erred in denying his motion to suppress because neither the pat-down search nor the inevitable discovery doctrine exceptions to the warrant requirement justified the warrantless search of his person. The Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution protect the right of the people to be free from unreasonable searches and seizures. *State v. Leyva*, 2011-NMSC-009, ¶ 1, 149 N.M. 435, 250 P.3d 861. In the

absence of an exception to the warrant requirement, we presume that warrantless searches are per se unreasonable. *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. The burden is on the State to prove that a warrantless search was reasonable because it was justified by an exception to the warrant requirement. *Id.*

## 1.      The Pat-Down Search

**{10}**     We first address Defendant's argument that the district court erred in denying his motion to suppress based on the pat-down exception to the warrant requirement. Defendant asserts that, in this case, conducting a pat-down search was unreasonable because the officers had no reason to believe that their safety was in danger. Defendant further argues that, even if the pat-down search was reasonable, it was unreasonable for Officer Crafton to believe that the round object in Defendant's pocket was a weapon, and its subsequent removal exceeded the scope of a legal pat-down.

**{11}**     The pat-down exception to the warrant requirement allows an officer to pat-down or frisk a suspect for the limited purpose of locating weapons. *State v. Vandenberg*, 2003-NMSC-030, ¶¶ 22-23, 134 N.M. 566, 81 P.3d 19. A pat-down is conducted solely as a safety precaution, and an officer may only pat-down a suspect when the officer has a particularized and objective basis to believe the suspect is both armed and presently dangerous. *See id.* A protective search is limited to what is necessary to discover weapons that may be used to harm the officer or others nearby, and an officer may "remove a hard object if by touch the officer remains uncertain as to whether the object might be a weapon." *State v. Barragan*, 2001-NMCA-086, ¶ 14, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{12}**     We consider a particular officer's conduct in conducting a limited pat-down for weapons as reasonable when, under the same circumstances, "a reasonable, well-trained officer" would have conducted a pat-down search. *Vandenberg*, 2003-NMSC-030, ¶ 23 (internal quotation marks and citation omitted). "If reasonable people might differ, we defer to the officer's good judgment." *Id.* (alteration, internal quotation marks, and citation omitted). In this case, we defer to Officer Crafton's judgment to conduct a pat-down search.

**{13}**     Defendant was generally cooperative and Officer Crafton had no specific information that Defendant was armed or dangerous. Officer Crafton reasonably suspected that Defendant was the primary aggressor in a domestic violence incident, and Defendant's behavior in hiding his hands in his pockets was suspicious. Thus, it was reasonable for Officer Crafton to be concerned that Defendant might be armed or dangerous and to conduct a protective pat-down for weapons. *Cf. Barragan*, 2001-NMCA-086, ¶ 13 (holding that an officer who was investigating a reported burglary was justified in handcuffing the defendant while conducting a protective search to determine whether the defendant was in fact armed); *State v. Chapman*, 1999-NMCA-106, ¶ 18, 127 N.M. 721, 986 P.2d 1122 (concluding that an officer was justified in conducting a pat-down for weapons during a routine traffic stop when a suspect's behavior was erratic, nervous, and hostile); *State v. Flores*, 1996-NMCA-

4

059, ¶ 17, 122 N.M. 84, 920 P.2d 1038 (noting that the nature of a crime may justify a pat-down search even where the tip provided to officers does not mention weapons). Having concluded that Officer Crafton was justified in conducting the protective pat-down search, we consider whether retrieving the concealed round object from Defendant's pocket exceeded the proper scope of a pat-down search for weapons.

**{14}** A pat-down search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *State v. Paul T.*, 1999-NMSC-037, ¶ 17, 128 N.M. 360, 993 P.2d 74 (internal quotation marks and citation omitted); *see also Leyva*, 2011-NMSC-009, ¶ 25 (reiterating that "[a] protective search is not a search for evidence [and it] must be limited to its purpose of protecting the officers, and the public, during the stop" (citation omitted)). After conducting a pat-down search, an officer may remove an object from a suspect's pocket only when the officer remains uncertain as to whether an object is a weapon and the object's size and density suggest that it might be a weapon. *See Paul T.*, 1999-NMSC-037, ¶ 18.

**{15}** In the present case, nothing in the record suggests that Officer Crafton suspected that the object in Defendant's pocket might be a weapon or that it was reasonable for Officer Crafton to remove the object from Defendant's pocket. Officer Crafton specifically testified that although he did not know what the golf-ball size object in Defendant's pocket was, it did not feel like a weapon. Moreover, the State's answer brief does not provide any argument or authority to persuade this Court that Officer Crafton's conduct in removing the object was reasonable.

**{16}** We conclude that the State failed to establish that the golf-ball sized object located in Defendant's pocket was of such a size and density to reasonably be considered a weapon. As a result, Officer Crafton did not have a reasonable basis for the intrusion into Defendant's privacy and removal of the round object from Defendant's pocket. *See id.* ¶ 19. Officer Crafton's conduct exceeded the scope of a protective pat-down for weapons, and the district court erred in concluding that the evidence was admissible based on the pat-down exception to the warrant requirement.

## 2.     The Inevitable Discovery Doctrine

**{17}** We now address whether the district court properly denied Defendant's motion to suppress based upon an application of the inevitable discovery doctrine. Section 31-1-7(A) authorizes a warrantless arrest for domestic battery only "when the officer is at the scene of a domestic disturbance and has probable cause to believe that the person has committed an assault or a battery upon a household member." Defendant argues that his arrest was not "at the scene of a domestic disturbance" because the altercation between Defendant and Victim occurred at the Tingley Coliseum parking lot, and the officers did not come into contact with Defendant until after Defendant and Victim had separated from one another and walked to different business locations away from the Tingley Coliseum parking lot. Thus, we must determine whether the district court's broad interpretation of the "at the scene of a domestic

5

disturbance" language in Section 31-1-7(A) was error. This issue appears to be one of first impression.

**{18}** The question of whether Defendant was arrested "at the scene" pursuant to Section 31-1-7(A) is an issue of statutory construction that we review de novo. *See State v. Saiz*, 2001-NMCA-035, ¶ 2, 130 N.M. 333, 24 P.3d 365. When interpreting statutory language, "our primary goal is to give effect to the intent of the [L]egislature," and in so doing, "we look first to the plain language of the statute." *Id.* We will give "effect to the plain meaning of the words of [a] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801. Finally, if more than one section of the statute is involved, we will read all pertinent sections together so that all are given effect. *See Saiz*, 2001-NMCA-035, ¶ 2.

**{19}** Section 31-1-7(A) in its totality states:

> Notwithstanding the provisions of any other law to the contrary, a peace officer may arrest a person and take that person into custody without a warrant when the officer is at the scene of a domestic disturbance and has probable cause to believe that the person has committed an assault or a battery upon a household member. As used in this section, "household member" means a spouse, former spouse, family member, including a relative, parent, present or former step-parent, present or former in-law, child or co-parent of a child, or a person with whom the victim has had a continuing personal relationship. Cohabitation is not necessary to be deemed a household member for purposes of this section.

**{20}** The State asserts that the plain language of the statute and the "broad range of remedies for domestic violence" support the district court's broad interpretation of Section 31-1-7(A) and do not suggest a narrow construction. It argues that the Legislature enacted Section 31-1-7(A) for the purpose of expanding police authority to make warrantless arrests for misdemeanor domestic battery where probable cause has been established. The State relies on NMSA 1978, Section 66-8-125 (1978) to provide support for its argument. The State's reliance on this motor vehicle statute to support its argument is misplaced.

**{21}** Section 66-8-125(A)(1) authorizes law enforcement to "arrest without [a] warrant any person . . . present at the scene of a motor vehicle accident." Notably missing from this statutory language is any requirement that the arrest be made when the officer is at the scene of the accident. It is the required presence of the arresting officer to be at the scene of a domestic violence disturbance that distinguishes the statutory requirements under Section 31-1-7(A) from the more flexible language in Section 66-8-125. As a result, once reasonable grounds have been established under Section 66-8-125(B), an officer may proceed with reasonable promptness to arrest a person who had been present at the scene of the accident, but who left the scene before the arrest is made. *State v. Calanche*, 91 N.M. 390, 393, 574 P.2d 1018, 1021 (Ct. App. 1978). The broader discretion allowed under Section 66-8-125

was also recognized by the Supreme Court when it validated the arrest of a person made at a house "near the scene of the accident" once the officer also established reasonable grounds that a crime had been committed. *City of Las Cruces v. Sanchez*, 2009-NMSC-026, ¶¶ 10, 18, 146 N.M. 315, 210 P.3d 212 (noting that the individual had fled the scene of the accident before the officers arrived). *Calanche* and *Sanchez* confirm that Section 66-8-125 authorizes an officer who is not present at the scene of an accident to make an arrest at a location that is away from the scene of the accident if all the other statutory requirements have been met.

**{22}** Section 31-1-7(A) is more narrowly drafted than its motor vehicle counterpart. This statute only allows a warrantless arrest to take place "when the officer is at the scene of the domestic disturbance." This express limitation prohibits the arresting officer's ability to effectuate a warrantless arrest at locations away from the scene of a domestic disturbance. We therefore conclude that the unambiguous language set forth in Section 31-1-7(A) does not authorize an officer to make a warrantless arrest of a suspect at another location away from the scene of a domestic disturbance.

**{23}** The policy reasons behind the broader language in the motor vehicle statute also compels us to conclude that Defendant's arrest was improper even though it occurred with reasonable promptness and only a few blocks away from the location of the domestic disturbance. As discussed in *Sanchez*, officers must be able to promptly locate and investigate a DWI suspect because the evidence of intoxication fades over time. 2009-NMSC-026, ¶ 15. In addition, it is also important to minimize the danger that a drunk driver poses to the members of the public at large. *See City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 16, 148 N.M. 708, 242 P.3d 275 (addressing the immediate and continuing danger that a drunk driver poses to the public); *State v. Contreras*, 2003-NMCA-129, ¶¶ 2, 14-15, 21, 134 N.M. 503, 79 P.3d 1111 (recognizing that the exigency of the threat to public safety posed by a drunk driver will justify an investigatory stop based upon an anonymous 911 tip from a concerned motorist who witnessed erratic driving).

**{24}** The State has not provided any authority recognizing policy concerns about the dissipation of evidence outside the DWI context. The record in this case does not contain any evidence that justifies an interpretation of Section 31-1-7(A) that would support a Legislative intent to preserve dissipating evidence in order to allow warrantless arrests of suspects at a location away from the scene of a domestic disturbance. While a person suspected of committing a misdemeanor domestic battery may pose a threat to the victim or others nearby, the Legislature did not express any intent to expand an officer's arresting authority based upon that consideration. In fact, the Legislature specifically granted the officer statutory authority to undertake alternative measures in order to protect the victim. NMSA 1978, § 31-1-7(C) (1995) (authorizing officers to protect victims by assisting them with obtaining medical attention and finding shelter). It follows that the imminent threat that typically persists in a domestic violence situation would be the threat to the safety of the victim or other related family members and acquaintances. Thus, the statute attempts to address these victim safety concerns. As a result, once the incident has concluded and the suspect leaves the scene of a domestic disturbance, care for the victim has been identified

by the Legislature as a policy consideration rather than any need to effectuate a warrantless arrest of the suspect at another location.

**{25}** In summary, the dangers posed to the public by DWI are specific to that crime and its severity, and the evidence in a DWI investigation, following a motor vehicle accident, is uniquely time sensitive because a suspect may avoid prosecution by avoiding arrest for a period of time. *See Martinez*, 2010-NMSC-033, ¶ 13; *Sanchez*, 2009-NMSC-026, ¶ 15. These policy concerns are less imminent in a domestic violence investigation when the aggressor has left the scene. To accept the State's argument that a warrantless arrest in the general vicinity of the previous domestic battery is "near enough" even though both parties have left the place where the battery occurred effectively renders the "at the scene" language of Section 31-1-7(A) unnecessary. *Cf. State v. Javier M.*, 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1 (rejecting the state's interpretation of one portion of a statute when to do so would render another part redundant or unnecessary, which is inconsistent with the rules of statutory interpretation that no portion of a statute be rendered superfluous); *State v. Johnson*, 1998-NMCA-019, ¶ 22, 124 N.M. 647, 954 P.2d 79 (recognizing that this Court rejects interpretations of statutes that render parts of them meaningless or mere surplusage). As a result, we decline to interpret the language of Section 31-1-7(A) as broadly as Section 66-8-125 has been interpreted. We hold that an officer may not arrest a suspect for domestic battery under Section 31-1-7(A) without a warrant unless the officer is conducting the arrest at the scene where the domestic disturbance occurred. *See Webster's Third New International Dictionary* 2028 (unabridged ed. 2002) (defining the word "scene," in the contest of this case, as "the place of occurrence or action").

**{26}** In this case, Victim and Defendant had separated and were located in two different public places away from the scene of the domestic battery when they encountered the officers. Victim specifically told the officers that she no longer felt threatened by Defendant and no further incidents occurred. Because the officers here encountered and arrested Defendant at a location other than the Tingley Coliseum parking lot, Section 31-1-7(A) did not provide authority for the officers to arrest Defendant for misdemeanor domestic battery without a warrant. *See State v. Romero*, 2001-NMCA-046, ¶ 13, 130 N.M. 579, 28 P.3d 1120 (concluding that Section 31-1-7(A) did authorize a warrantless arrest where each of three deputies observed signs of domestic violence at the location of the arrest). Thus, the district court erred in concluding that the evidence would have been inevitably discovered during a search incident to a legal arrest for misdemeanor domestic battery because such an arrest could only have been effectuated at the scene where the domestic battery occurred. *See* § 31-1-7(A).

**CONCLUSION**

**{27}** For the foregoing reasons, we reverse the district court's order denying Defendant's motion to suppress.

**{28}** **IT IS SO ORDERED.**

8

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**


_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *State v. Almanzar*, No. 30,600**

**APPEAL AND ERROR**
Remand
Standard of Review

**CONSTITUTIONAL LAW**
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
Controlled Substances
Domestic Violence

**CRIMINAL PROCEDURE**
Search and Seizure
Warrantless Search