This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. A-1-CA-35432**

**MANUEL VILLARREAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}     Defendant Manuel Villarreal was convicted of possession of methamphetamine, possession of a firearm by a felon, and concealing identity, pursuant to a conditional plea. *See* NMSA 1978, § 30-31-23(A) (2011); NMSA 1978, § 30-7-16(A) (2001); NMSA 1978, § 30-22-3 (1963). Defendant reserved the right to appeal the district court's denial of his motion to suppress evidence. On appeal, Defendant argues that he was subjected to a pretextual stop in violation of the New Mexico Constitution. We hold that the stop of Defendant was not pretextual, and we therefore affirm the district court's denial of the motion to suppress.

**BACKGROUND**

{2}     At the suppression hearing, Agent John Clay of the Chaves County Metro Narcotics Task Force Unit testified that he and two other officers were traveling northbound in an unmarked police car on a residential street in Roswell, New Mexico. Agent Clay saw Defendant walking northbound with two other men, Matthew Sifuentes and Herman Najar. Defendant and Sifuentes were walking in the street in violation of NMSA 1978, Section 66-7-339(A) (1978), which provides, "Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." Agent Clay engaged his emergency lights and approached the men along with the other officers. As they approached, Agent Clay saw Defendant turn away as if to make the right side of his body less visible. Defendant also had his right hand in his jacket pocket.

2

{3}     Agent Clay recognized Sifuentes based on several previous contacts as someone who routinely possessed a handgun. He asked Sifuentes if he was armed, and Sifuentes said no. He then asked Defendant and Najar if they were armed, and they also responded no. Agent Clay then approached Defendant who sat down on the curb without being asked to do so. Agent Clay observed that Defendant was acting extremely nervous. Agent Clay asked Defendant his name and date of birth, and Defendant falsely said his name was "Matthew Villareal." Defendant then stuttered while giving his birth date and also gave two different birth years.

{4}     Agent Clay had dispatch run the name and birth date Defendant provided, but did not conduct a pat-down. However, he asked Defendant to remove his right hand from his jacket pocket, and Agent Clay saw that it was covered with a blue latex glove, although Defendant's left hand did not have a glove. Agent Clay also observed that Defendant's jacket pocket continued to sag as if it contained something heavy even after Defendant removed his hand. Agent Clay walked onto the sidewalk behind Defendant and could see the handle of a gun in Defendant's pocket in plain view. Agent Clay then told Defendant to put his hands on his head and handcuffed him. Agent Clay retrieved the gun and also found methamphetamine inside Defendant's pocket.

{5}     Defendant filed a motion to suppress, arguing in part that he was subjected to a pretextual stop in violation of Article II, Section 10 of the New Mexico Constitution.

3

The district court denied the motion, ruling that there was no basis to conclude that Agent Clay had an ulterior motive when he stopped Defendant and the others. Defendant then entered into a conditional plea, reserving the right to appeal the denial of the motion to suppress.

**STANDARD OF REVIEW**

{6}    "The review of a denial of a motion to suppress presents a mixed question of fact and law." *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. "[T]he appellate court reviews the facts for substantial evidence, deferring to the lower court's findings regarding the evidence presented." *State v. Goodman*, 2017-NMCA-010, ¶ 5, 389 P.3d 311. "The application of law to fact is a legal determination, which we review de novo." *State v. Garnenez*, 2015-NMCA-022, ¶ 13, 344 P.3d 1054.

**DISCUSSION**

{7}    Defendant contends that his stop was illegal because it was pretextual. Defendant relies exclusively on *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143, for this argument. *Ochoa* involved a traffic stop and specifically discussed pretextual stops in that context. *See id.* ¶¶ 4, 40 (holding that a pretextual traffic stop violates Article II, Section 10 of the New Mexico Constitution if the real purpose for the stop is not supported by reasonable suspicion or probable cause, and the officer would otherwise not have stopped the vehicle). No New Mexico case has decided that *Ochoa* applies to a pedestrian stop, as occurred in this case, and Defendant does not

4

make that argument on appeal. Conversely, the State does not argue that *Ochoa* is inapplicable to pedestrian stops. For purposes of this appeal, however, we will assume without deciding that *Ochoa* applies to the circumstances of this case. For the following reasons, we conclude that Defendant has not met his burden to show that the stop was pretextual.

{8}    "[A] pretextual stop [is] a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a 'hunch,' a different[,] more serious investigative agenda for which there is no reasonable suspicion or probable cause." *State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (internal quotation marks and citation omitted). We follow a three-step approach to determine whether a pretextual stop has occurred. We first determine whether there was reasonable suspicion or probable cause for the stop and then decide if the officer's actual motive for the stop was unrelated to the justification for the stop. *Ochoa*, 2009-NMCA-002, ¶ 40. "The defendant has the burden of proof to show pretext based on the totality of the circumstances [and, i]f the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.* However, "[i]f the defendant shows sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause, then there is a rebuttable presumption that the stop was pretextual[,]" at which point the burden shifts to the

5

state to prove that the officer would have stopped the defendant even without the alternate motive. *Id.*

{9}     The parties do not dispute that, when the officers encountered him, Defendant was walking in the street next to a sidewalk. Agent Clay testified that he saw Defendant and Sifuentes walking in the road and that he would have had to pull into the oncoming traffic lane to avoid them. These facts are sufficient to establish a reasonable suspicion to stop Defendant for violating the law. *See generally* NMSA 1978, § 66-7-339(A) (1978) ("Where sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.").

{10}     The burden then shifts to Defendant to show that the police had an unrelated motive for stopping him that was not supported by reasonable suspicion. *See Ochoa*, 2009-NMCA-002, ¶ 40 (stating that if reasonable suspicion exists to support a stop, to establish that the stop was pretextual the defendant has the burden to show that, under the totality of the circumstances, there was an unrelated motive for the stop that was not supported by reasonable suspicion). "The totality of the circumstances includes considerations of the objective reasonableness of an officer's actions and the subjective intent of the officer—the real reason for the stop." *Id.* ¶ 39.

{11}     Defendant asserts that the officers' real motive in stopping him and his companions was to investigate Sifuentes as a suspect in a homicide and to search them for weapons. Defendant argues that the investigation that occurred after the stop bore

6

no relation to the municipal code violation for walking in the roadway, and that on stopping them, Agent Clay immediately questioned Sifuentes about weapons. Defendant also points out that Agent Clay never informed the men that they were being stopped for walking in the street, and Defendant was never given a citation for violating the ordinance. Defendant also argues that there was no evidence that Defendant's walking in the street presented a danger to anyone.

{12}     We first disagree that there was nothing to show that Defendant's walking in the street created a danger because Agent Clay testified that it would have been necessary to pull into the oncoming traffic lane to avoid the men. *See id.* ¶ 41 (considering whether the articulated reason for the stop was necessary for the protection of traffic safety when determining whether a stop is pretextual). With respect to the questions to the group about weapons, the district court determined that they were reasonable under the circumstances and did not establish a pretextual stop. The district court considered that Agent Clay was aware from prior encounters that Sifuentes was often armed. Additionally, when Agent Clay approached the group, Defendant tried to hide the right side of his body from the officers' view and was acting extremely nervous. Under these circumstances, we agree with the district court that the brief questioning regarding weapons was reasonable and insufficient to show a pretextual motive for the stop. *See State v. Chapman*, 1999-NMCA-106, ¶ 17, 127 N.M. 721, 986 P.2d 1122 (holding that it was lawful for the officer to ask questions

about weapons where the officer described nervousness as well as specific behaviors that explained why he was concerned that the defendant was dangerous); *State v. Flores*, 1996-NMCA-059, ¶ 11, 122 N.M. 84, 920 P.2d 1038 (stating that when making an investigatory stop, when an officer reasonably believes the individual may be armed and dangerous, he or she may check for weapons to ensure personal safety).

**{13}** The district court also considered that Agent Clay accepted the men's denials that they were armed, and he did not ask further questions or conduct a pat-down search for weapons. Although Agent Clay ultimately recovered a weapon from Defendant, that occurred only after Agent Clay saw the handle of a gun in plain view sticking out of his pocket. Information that Defendant was in possession of a gun developed in the course of the encounter, however, and Defendant has not shown that it was the true motive for the stop.

**{14}** Nor do we see anything in the record to support Defendant's claim that the real motive for the stop was to investigate Sifuentes as a suspect in a homicide. As the district court found, the officers did not ask any questions of the group relating to any separate investigation. Additionally, the district court found other factors weighing against pretext such as the non-confrontational manner of the officers during the stop, Agent Clay's testimony that the only reason for the stop was the municipal code violation, and the short period of time. *See Ochoa*, 2009-NMCA-002, ¶ 41 (considering factors such as the conduct, demeanor, and statements of the officer

8

during the stop and the officer's testimony as to the reason for the stop in determining whether a stop was pretextual). For these reasons, we agree with the district court that, under the totality of the circumstances, Defendant failed to show that Agent Clay had a motive in stopping him other than for the municipal ordinance violation. *See id.* ¶ 40 ("If the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual.").

{15}     As a final matter, we note that defense counsel argues in his brief in chief that "Agent Clay[] candidly testified his stop was to investigate the possession of firearms, for which there was no sufficient legal basis." Counsel also states that "Agent Clay relied upon [Defendant's] nervousness to justify detaining him." Counsel has not cited to the record for these assertions, and our review of the suppression hearing reveals no such testimony.

**CONCLUSION**

{16}     For these reasons, we affirm the district court's denial of the motion to suppress.

{17}     **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**JENNIFER L. ATTREP, Judge**